EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> José N. López Sánchez | 2006 TSPR 111 <br><br> 168 DPR \_\_\_\_ |

Número del Caso: AB-2003-12

Fecha: 19 de junio de 2006

Abogado de la Parte Peticionaria:

                        Por Derecho Propio

Oficina de Inspección de Notaría:

                        Lcda. Carmen H. Carlos

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    José N. López Sánchez

                   AB-2003-12  Queja

PER CURIAM

En San Juan, Puerto Rico, a 19 de junio de 2006.

Luego de estudiar el informe de la Oficina de Inspección de Notarías (ODIN) y el expediente de la queja de autos, censuramos enérgicamente la conducta del Lcdo. José N. López Sánchez por ser contraria a las normas que rigen el ejercicio de la notaría y al Código de Ética Profesional.

I.

La Sra. Miguelina Velázquez presentó queja contra el Lcdo. José N. López Sánchez ante el Procurador General. Mediante carta del 1 de noviembre de 2002 el Procurador General notificó el archivo de la queja. Por consiguiente, el 21 de enero de 2003 la señora Velázquez decidió

presentar una segunda queja contra el licenciado López Sánchez pero, esta vez, ante este Tribunal.

Expondremos los hechos según se desprenden del informe de ODIN y del escrito en reacción a dicho informe que presentó el licenciado López Sánchez por órdenes de este Tribunal. Veamos.

1. La quejosa, en o alrededor del 24 de agosto de 2002, solicitó los servicios del licenciado López Sánchez para redactar y autorizar una escritura sobre constitución de segunda hipoteca en garantía de un pagaré hipotecario. Dicha hipoteca garantizaría una suma de dinero que los esposos Eugene Vázquez Domínguez y Edith Olmedo Pérez le iban a deber a la quejosa por concepto de la compraventa de una propiedad localizada en el Barrio Mamey de Juncos.

2. En dicha ocasión, el querellado les advirtió que la escritura de segunda hipoteca no podía otorgarse hasta tanto se efectuara el cierre en el banco hipotecario y los compradores adquirieran la propiedad en cuestión.

3. Admite el querellado que no obstante redactó la escritura de segunda hipoteca y un pagaré por $31,642.39, dejando espacios en blanco para en su momento poner los datos de la escritura de compraventa cuando ésta se otorgara.

4. El cierre de la transacción se llevó a cabo en R&G el 30 de agosto de 2001. La compraventa se realizó por el precio de $290,000 mediante la escritura 156 autorizada por el notario Juan Carlos Goitía Rosa. En la misma fecha y ante el mismo notario se otorgó la Escritura Núm. 157 sobre Primera Hipoteca por la cantidad de $217,500

5. De los aludidos instrumentos surge que los comparecientes en la escritura de compraventa lo fueron, como parte vendedora, Griselle Socorro Cifuentes Velázquez, y como compradores los esposos Eugene Vázquez Domínguez y Edith Olmedo Pérez. La quejosa no compareció en la escritura de compraventa número 156 antes mencionada.

6. **El licenciado López Sánchez niega que autorizó la escritura de segunda hipoteca, así como que ante él se hubiera firmado el pagaré, debido a que los compradores rehusaron firmar los documentos como consecuencia de ciertos defectos de construcción de los que adolecía la propiedad adquirida.**

7. Reconoce, sin embargo, que existía "el compromiso de los otorgantes de que tan pronto ocurriera el

cierre volvieran a mi oficina para completar la escritura".

8. Acepta el querellado, además, que continuó haciendo gestiones para que los compradores pasaran por su oficina para otorgar la escritura de segunda hipoteca.

9. La quejosa, con fecha 4 de septiembre de 2002, radicó en el Tribunal de Primera Instancia una acción en cobro de dinero contra los compradores Eugene Vázquez Domínguez y Edith Olmedo Pérez alegando que era tenedora de un pagaré hipotecario al portador suscrito por éstos por la suma de $31,642.39.

10. Acompañó a su demanda una fotocopia de un pagaré hipotecario suscrito el 27 de agosto de 2001 por la suma de $31,642.39 por Eugene Vázquez Domínguez y Edith Olmedo Pérez y firmado y sellado por el notario José N. López Sánchez bajo el affidávit número 2,097.

11. Los compradores demandados aceptaron la deuda, pero presentaron como defensa que el pagaré por ellos suscrito fue para completar el pronto de una propiedad que adquirieron, y que el mismo no fue presentado al Registro de la Propiedad por lo que la obligación era personal y no hipotecaria.

12. La acción instada culminó en sentencia por estipulación del 5 de agosto de 2003 a favor de la parte demandante, aquí quejosa, en la que se reconoce que la parte demandada le pagó una cantidad satisfactoria a ésta.

13. **En los índices mensuales del querellado no aparecen notificados la notarización del alegado pagaré de fecha 27 de agosto de 2001, número 2,097, ni la autorización de la escritura sobre constitución de segunda hipoteca.** (Énfasis nuestro).

Respecto a estos hechos la Directora de ODIN levantó en su informe una serie de interrogantes. En primera instancia señaló que del expediente no surge el interés propietario de la quejosa sobre la propiedad vendida. La señora Velázquez no compareció como parte vendedora en la escritura de compraventa pero suscribió en su carácter personal como propietaria y vendedora el contrato de opción de compra promovido por la firma de bienes raíces Pol H. Realty and Investments. En segundo lugar, el licenciado López Sánchez negó categóricamente haber autorizado el pagaré y la escritura de segunda hipoteca el mismo día en que redactó

dichos documentos. Sin embargo, la señora Velázquez presentó ante el foro de instancia una demanda en cobro de dinero junto con una fotocopia de un pagaré hipotecario, fechado el 27 de agosto de 2001 por la suma de $31,642.39 y suscrito por Eugene Vázquez Domínguez y Edith Olmedo Pérez, ante el notario José N. López Sánchez bajo el affidávit número 2,097. Dicho pagaré nunca fue notificado en el índice notarial correspondiente al mes de agosto de 2001. Al respecto la quejosa afirma que el 30 de agosto de 2001, luego del cierre, ella y los compradores fueron a las oficinas del licenciado López Sánchez a firmar la escritura de segunda hipoteca y el pagaré. Alegó que varios días después regresó a la oficina del notario a buscar el original del pagaré y que éste le entregó una copia. En ese momento se percató de que tenía fecha del 27 de agosto de 2001 y que el licenciado López Sánchez le había informado que no podía entregarle el pagaré debido a que los compradores tenían que volver a firmar porque la fecha estaba incorrecta.

A raíz de las interrogantes planteadas por la Directora de ODIN, el 17 de agosto de 2004 dictamos resolución ordenando al licenciado López Sánchez a expresarse sobre el informe. El 13 de septiembre de 2004, el licenciado López Sánchez reaccionó al informe y señaló lo siguiente:

1. El día 24 de agosto de 2001, fecha en que la querellante se personó a mi oficina en unión a los prospectos otorgantes de los documentos en cuestión, era viernes como a las cuatro o cinco de la tarde. Fueron los últimos clientes que atendí ese día y no volvería a abrir la oficina hasta el próximo lunes 27 de agosto.

2. Por tal razón procedí a preparar los documentos, asignándoles el número que le correspondería el

próximo lunes, advirtiéndoles claramente a los comparecientes que éstos serían válidos únicamente si

el cierre se efectuaba el próximo lunes como lo tenían planeado.

3. Recordando la continua insistencia de la querellante, que quería que ese mismo día los prospectos compradores firmaran algún documento que los obligara, y habiendo visto la copia de dicho pagaré como anejo en el informe de la Directora, **es forzoso aceptar que, aunque equivocadamente, fue autorizado por mi ese día**.

4. El lunes siguiente al enterarme por la quejosa de que el cierre no se había llevado a cabo procedí a destruir las copias impresas de los documentos redactados y a informarle que tendrían que regresar a mi oficina tan pronto se efectuara el cierre para otorgar los instrumentos.

5. Por las razones expresadas en la comunicación antes aludida[,] los documentos finales nunca fueron otorgados. El número asignado al pagaré se le asignó a otro documento otorgado (el 31 de agosto, Anejo VII del Informe), por lo que éste no aparece en el índice notarial de ese mes. (Énfasis nuestro).

II.

El notario ejerce una función clave de inestimable importancia en los negocios jurídicos porque es custodio de la fe pública. Es decir, al autorizar un documento, el notario presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley (formal y sustantivamente), que el documento es legal y verdadero y que se trata de una transacción válida y legítima. In re Feliciano Ruiz, 117 D.P.R. 269 (1986).

El Artículo 2 de la Ley Notarial de Puerto Rico dispone:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y
>
> conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente

ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 L.P.R.A. § 2002.

De igual forma la Regla 2 del Reglamento Notarial de Puerto Rico señala:

> ... El notario es el profesional del derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido.

> En su función pública, ejerce la fe pública notarial que tiene y ampara un doble carácter:
> (A) En la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y

> (B) en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes. 4 L.P.R.A. Ap. XXIV, R. 2.

Por otro lado, la Ley Notarial requiere que los notarios envíen a ODIN "un índice mensual sobre sus actividades notariales, no más tarde del décimo día calendario del mes siguiente al mes informado, en el que harán constar respecto a las escrituras matrices y los testimonios por ellos autorizados en el mes precedente, los números de orden de éstos, los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio y el nombre de los testigos, de haber comparecido alguno". 4 L.P.R.A. § 2023. En innumerables ocasiones hemos expresado que la obligación de los notarios de rendir índices notariales es de estricto cumplimiento. El notario que incumple con esta obligación incurre en conducta que acarrea la imposición de sanciones disciplinarias. In re Bray Leal, 137 D.P.R. 816 (1995).

Respecto a los testimonios de autenticidad, el Artículo 60 de la Ley Notarial señala que "[s]erá nulo el testimonio no incluido en el índice, que no lleve la firma del notario autorizante o que no se haya inscrito en el Registro de Testimonios". 4 L.P.R.A. § 2095. La Regla 73, sin embargo, aclara que la nulidad de la que habla dicho articulado "no es la radical o absoluta, sino la anulabilidad que subsistirá hasta que fuere demostrado fehacientemente que el defecto ha sido subsanado por el notario". 4 L.P.R.A. Ap. XXIV, R. 73.

III.

En el caso de autos, aunque los hechos según transcritos anteriormente no revelan claramente lo ocurrido, es forzoso concluir que el licenciado López Sánchez violó el principio fundamental de la fe pública que rige la labor notarial. En la moción en reacción al informe de ODIN, el licenciado López Sánchez admite, para todos los efectos, haber autorizado no sólo el pagaré hipotecario sino también la escritura de segunda hipoteca sobre una propiedad que aún no le pertenecía al deudor hipotecario. Dicho proceder es contrario a las normas vigentes.

El Artículo 1756 del Código Civil señala que un requisito esencial del contrato de hipoteca es que la cosa hipotecada pertenezca en propiedad al que la hipoteca. Artículo 1756 del Código Civil, 31 L.P.R.A. § 5001. En el caso de autos el licenciado López Sánchez autorizó una

escritura de hipoteca a sabiendas de que los esposos Eugene Vázquez Domínguez y Edith Olmedo Pérez aún no eran dueños de la propiedad hipotecada. Además, el licenciado López

Sánchez redactó y autorizó un pagaré hipotecario en el que se hace constar que el pago de la deuda de $31,642.39 estaría garantizado mediante "hipoteca voluntaria sobre una finca de su propiedad, según se expresa en la escritura número quince (15) de esta misma fecha ante el notario que autoriza esta obligación". El licenciado López Sánchez no registró ninguno de los documentos en su índice mensual. Es decir, rindió el índice mensual pero no informó los documentos aquí en controversia.

Respecto al pagaré, el notario dio fe de la legitimación de las firmas de los suscribientes. La Regla 67 del Reglamento Notarial dispone que el testimonio de legitimación de firma es aquel que "acredita el hecho de que, en determinada fecha, una firma ha sido puesta en presencia del notario y por quien evidentemente es quien dice ser...". 4 L.P.R.A. Ap. XXIV, R. 67. Según se desprende del pagaré en controversia, el licenciado López Sánchez dio fe de haberse autorizado éste el 27 de agosto de 2001, cuando en realidad se autorizó el viernes 24 de agosto de 2001.[1] Dicha actuación constituye una violación al principio de la fe pública notarial.

Por otro lado, debemos señalar que las actuaciones del licenciado López Sánchez, a su vez, constituyen violaciones al Canon 18 del Código de Ética Profesional. El Canon 18, en lo pertinente, dispone:

---

[1] El licenciado López dio fe de la legitimación de las firmas en el pagaré mediante affidávit número 2,097 al hacer constar bajo su firma y sello lo siguiente:

Suscrito ante mí por Don Eugene Raul Vázquez Domínguez y Doña Edith Olmedo Pérez, ..., mayores de edad, casados entre sí, propietarios y vecinos de Juncos, Puerto Rico, a quienes conozco personalmente, en Caguas, Puerto Rico, el 27 de agosto de dos mil uno.

...Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan... 4 L.P.R.A. Ap. IX, C. 35.

Además, no podemos pasar por alto que el licenciado López Sánchez originalmente no aceptó haber autorizado los documentos en controversia. No fue hasta que la Directora de ODIN planteó en su informe una serie de interrogantes que el licenciado López Sánchez finalmente aceptó, para todos los efectos, haber autorizado los documentos en controversia. Dicha conducta, al igual que la autorización de dichos documentos, infringió el deber de sinceridad y honradez que impone el Canon 35 de Ética Profesional. El Canon 35 señala:

La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable. 4 L.P.R.A. Ap. IX, C. 35.

IV.

Por los fundamentos antes expuestos procede que sancionemos al licenciado López Sánchez por sus actuaciones contrarias a la ley y al reglamento notarial vigente y a los cánones 18 y 35 del Código de Ética Profesional. En la moción del 27 de abril de 2005, la Directora de ODIN correctamente concluyó que "el licenciado López Sánchez intervino en la formación y asesoramiento de un contrato de segunda hipoteca ajeno a la transacción hipotecaria primaria. Todo parece indicar que cedió a presiones de los otorgantes, al redactar una escritura y un pagaré hipotecario que fueron firmados ante unas circunstancias no muy claras. Lo anterior, revela un proceder impropio y un negocio jurídico mal conformado desde sus orígenes, en lo que respecta a la validez del documento que lo sustenta".

Sin embargo, debemos tener presente que al determinar la sanción disciplinaria del abogado querellado podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el historial previo de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, **resarcimiento al cliente** y cualesquiera otras consideraciones que puedan considerarse como atenuantes o agravantes según las circunstancias. *Véase* In re Padilla Rodríguez, 145 D.P.R. 536 (1998). En el caso de autos debemos aceptar como atenuante que la quejosa presentó una demanda civil en cobro de dinero contra los esposos que suscribieron el pagaré y el foro de instancia dictó sentencia mediante estipulación terminando la controversia y ordenando la entrega de una

suma de dinero satisfactoria para la señora Velázquez. A la luz de las circunstancias particulares de este caso, limitamos la sanción del licenciado López Sánchez a una censura enérgica.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

José N. López Sánchez

AB-2003-12   Queja

SENTENCIA

En San Juan, Puerto Rico, a 19 de junio de 2006.

A tenor con la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente, se dicta sentencia censurando enérgicamente la conducta del Lcdo. José N. López Sanchez, por ser contraria a las normas que rigen el ejercicio de la notaría y al Código de Ética Profesional.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo